UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLASTERERS LOCAL 67 PENSION
TRUST FUND, *et al.,*

      Plaintiffs,                                Case No. 06-12216

v.                                                  Hon. John Corbett O'Meara

NILES GROUP, LTD. d/b/a VALLEY
PAINTING, INC.

      Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Before the court are the parties' cross-motions for summary judgment, filed December 19, 2006. The court heard oral argument on February 22, 2007. For the reasons stated below, the court grants Plaintiffs' motion and denies Defendant's motion.

**BACKGROUND FACTS**

Plaintiffs are multi-employer fringe benefit funds affiliated with Local 67 of the Operative Plasterers' and Cement Masons International Association. Local 67 has a collective bargaining agreement with Niles Group (doing business as Valley Painting), as of June 27, 2003. Plaintiffs brought this action to recover fringe benefit contributions from Niles Group that they contend are due under the Plasterers' Agreement.

The Plasterers' Agreement covers work performed in the geographic area of southeastern Michigan, including Wayne, Oakland, and Washtenaw counties. Agreement at Article IX, Section 12, p. 22. Relevant to this dispute, the Agreement covers certain "fireproofing" work, including the "application of Intumescent Fireproofing. . ." and work with "any cementitious

material applied by trowel or plasterers' spray equipment." Agreement at Article IX, Section 2, pp. 18-19.

During a routine audit of Defendant's payroll records for the period June 2003 through July 6, 2005, Plaintiffs determined that Defendant failed to pay contributions based upon 2,025 hours of work performed on several jobs.  It is undisputed that these jobs are within the geographic jurisdiction of the Plasterers' Agreement.  It is also undisputed that these jobs consisted of fireproofing or plasterer work, as described in the Agreement.

Defendant concedes that it is bound by the terms of the Plasterers' Agreement. Defendant contends, however, that it is not obligated to pay fringe benefit contributions for the jobs at issue.  According to Defendant, it assigned the work on those jobs to employees affiliated with other unions and paid fringe benefit contributions to those unions' funds.  Therefore, Defendant argues, it is not liable for fringe benefit contributions to the Plaintiff funds as a matter of law.

## LAW AND ANALYSIS

Section 515 of the Employee Retirement Income Security Act ("ERISA") provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  Defendant's obligation to make fringe benefit contributions is governed by the terms of the Plasterers' Agreement.

Defendant does not dispute that the jobs at issue were in the territory covered by Plasterers' Agreement or that those jobs constituted plasterers' work as defined by the

Agreement. Rather, Defendant contends that it is not liable because it assigned the work to employees affiliated with other unions and paid contributions to those unions' funds.[1] Defendant argues that there "is nothing in this Collective Bargaining Agreement that provides for double payment." Def. Br. at 9. In support of this argument, Defendant primarily relies upon two unpublished Sixth Circuit cases, Trustees of the B.A.C. Local 32 Insurance Fund v. Ohio Ceiling and Partition Co., 48 Fed. Appx. 188 (6th Cir. 2002) ("OCP I") and Trustees for Michigan B.A.C. Health Care Fund v. OCP Contractors, Inc., 136 Fed. Appx. 849 (6th Cir. 2005) ("OCP II").[2]

These cases do not, however, stand for the general proposition that an employer is never required to "double pay" fringe benefit contributions where there are overlapping collective bargaining agreements. In both OCP I and OCP II, the court determined that the agreements at issue did not cover the work or employees for which the funds sought contributions.

In OCP I, the court found that a "traveling contractors" clause in an Ohio agreement did not serve to bind the defendant to a Michigan agreement. In dicta, the court also acknowledged the district court's concern that, had the ruling gone the other way, the employer would be "double paying" contributions to two different union funds and that one of the funds would receive a windfall. The Sixth Circuit did not expressly resolve this issue or indicate that such "double payment" is never permissible. Rather, the court noted that "the real question is whether plaintiffs could demonstrate a contractual obligation to make contributions to the bricklayers funds when the carpenters union agreements purported to cover the same work, the work was

---

[1] Plaintiffs note that Defendant has not demonstrated that the work actually came within the CBAs of the competing unions or that Defendant was obligated to contribute to those funds.

[2] Although these cases involve the same defendant, they are not related.

assigned to employees covered by the carpenters union agreements and contributions were made in full to the carpenters union funds." OCP I, 48 Fed. Appx. at 198 (emphasis added).  Defendant suggests that this language means that the collective bargaining agreement must expressly provide for "double payment," although the case language does not support this interpretation.

In OCP II, the court cited OCP I for the proposition that "[i]n situations where an employer is exposed to conflicting CBAs that purport to impose a duty to 'double pay' for the same job, the collecting trustee must show that the CBA created a contractual obligation for the employer to make contributions to both plans, even though only one union did the work." OCP II, 136 Fed. Appx. at 850.  The court in OCP II found that there was no obligation to contribute to the plaintiff funds because the workers at issue were not members of Local 9, as required by the CBA.

The OCP I and OCP II cases did not create a special test for determining whether an employer must "double pay" contributions for the same job.  The language relied upon by Defendant from OCP I (and which was cited again in OCP II) is pure dicta.  Further, in both cases, the court found that the express language of the collective bargaining agreements simply did not require contributions under the circumstances presented.  In contrast, the parties do not dispute that the jobs and work at issue here are covered by the Plasterers' Agreement and that, but for the "double payment" issue, contributions would otherwise be required.

Defendant suggests that this case really involves a jurisdictional dispute between two unions over the assignment of work.  As Plaintiffs point out, however, Defendant has not demonstrated that the work was actually covered by any other collective bargaining agreement. (For example, Defendant has not attached copies of the other agreements or analyzed how the

work at issue here is covered by them.) Moreover, any jurisdictional dispute between unions does not necessarily impact the Plaintiff funds' ability to recover contributions that are properly due under the Agreement. See Rhode Island Carpenters Annuity Fund v. Trevi Icos Corp, __ F. Supp. 2d __, 2007 WL 496781 (D. R. I. 2007) (discussing "compelling weight of authority" that a union's failure to challenge work assignments to competing union "will not later bar a fund's ERISA claim for contributions for work assigned to members of a competing union").

> Settled authority recognizes that a pension fund is a distinct legal entity from its constituent union and therefore not subject to the grievance/arbitration or jurisdictional dispute clauses contained in the CBAs between the union and various employers; and because, here, the funds, through their administrator (as opposed to the union itself), bring a claim under ERISA § 515 for contribution, the union's failure to invoke the jurisdictional dispute clause *ex ante* will not operate to defeat the funds' action for contribution under ERISA. It may be that, as a matter of public policy, the reasoning of the Eighth Circuit in *McKenzie* is more sensible. Under the current 'majority rule,' an employer may be placed at risk of double payment requirements for benefit fund contributions simply because one union fails (either intentionally or not) to exercise its jurisdictional dispute resolution rights against another trade union. Nevertheless, this type of policy choice is for Congress, not this court, and because ERISA allows for these types of claims they cannot be defeated merely because of harsh consequences. Moreover, this outcome is avoidable by placing appropriate language in the CBA to preclude double payment responsibility.

Id. at *6. See also Trustees of the Glaziers, Architectural Metal and Glass Workers Local Union No. 27 Welfare and Pension Funds v. Gibson, 99 Fed. Appx. 740, 741 (7th Cir. 2004) (unpublished) ("If the CBA provides that contributions to the Fund are to be made for glazing work, Gibson cannot avoid his obligations by assigning that work to nonunion members or, as here, members of a different union."); Trustees of the B.A.C. Local 5 Funds v. Plaster Master, Inc., 2001 WL 34456771 *4 (S.D. N.Y. Jan. 9, 2001) (holding that "the fact that Plaster Master

is required to make double payments with respect to contributions for work performed by Local 260 members [is not] a defense to recovery under § 515").

Defendant's only defense is that it should not be forced to "double pay" contributions to two different funds for the same work. Defendant's argument may make sense from a policy perspective; however, the weight of legal authority is to the contrary. Defendant does not challenge Plaintiffs' interpretation of the Plasterers' Agreement as covering the jobs or work at issue. Defendant also does not challenge Plaintiffs' calculation of the amount of contributions and interest due. Accordingly, the court grants Plaintiffs' motion for summary judgment and denies Defendant's motion for summary judgment.

## **ORDER**

IT IS HEREBY ORDERED that Plaintiffs' December 19, 2006 motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that Defendant's December 19, 2006 motion for summary judgment is DENIED.

s/John Corbett O'Meara
United States District Judge

Dated: February 23, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 26, 2007, by electronic or ordinary mail.

                                        s/William Barkholz
                                        Case Manager